**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CALVIN HARRIS,**

                                    **Plaintiff,**

      **vs.**                                    **1:17-CV-932**
                                              **(MAD/TWD)**

**STEVEN ANDERSEN, SUSAN MULVEY,**
**and BARBARA THAYER,**

                                  **Defendants.**

_____

**APPEARANCES:**                           **OF COUNSEL:**

**BARKET EPSTEIN & KEARON**      **ALEXANDER ROBERT KLEIN, ESQ.**
**ALDEA & LOTURCO, LLP**           **BRUCE A. BARKET, ESQ.**
666 Old Country Road, Suite 700     **DONNA ALDEA, ESQ.**
Garden City, New York 11530
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**       **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**     **COLLEEN D. GALLIGAN, AAG**
The Capitol                            **ALEXANDRA L. GALUS, AAG**
Albany, New York 12224          **KAITLIN N. VIGARS, AAG**
Attorneys for Defendants Steven Andersen  **LAUREN ROSE ROSENBERG, AAG**
and Susan Mulvey

**BUTLER, MUCCI & GRACE, LLP**    **MATTHEW C. BUTLER, I, ESQ.**
231-241 Main Street                **CHRISTOPHER D. GRACE, ESQ.**
Vestal, New York 13850          **DAVID E. BUTLER, ESQ.**
Attorneys for Barbara Thayer

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 22, 2017, Plaintiff Calvin Harris brought this action, asserting numerous

constitutional claims, pursuant to 42 U.S.C. § 1983. _See_ Dkt. No. 1. The complaint alleges that

1

Tioga County (the "County"), the County District Attorney's Office, former County District Attorney Gerald Keene ("Defendant DA Keene") (collectively the "County Defendants"), New York State Police Investigators Susan Mulvey ("Defendant Mulvey"), Steven Andersen ("Defendant Anderson"), Mark Lester ("Defendant Lester") (collectively the "State Defendants"), along with a civilian Barbara Thayer ("Defendant Thayer"), conspired with each other to maliciously prosecute Plaintiff on the basis of false and fabricated evidence. Specifically, the complaint states ten causes of action: malicious prosecution (Count One), fabrication of evidence (Count Two), failure to investigate (Count Three), the suppression of evidence (Count Four), conspiracy (Count Five), supervisory liability (Count Six), municipal liability (Count Seven), and defamation (Count Eight) as well as related state law claims for malicious prosecution (Count Nine) and infliction of emotional distress (Count Ten).

In June 2022, State Defendants, County Defendants, and Defendant Thayer filed motions for summary judgment. *See* Dkt. Nos. 97, 100, 101. On March 23, 2023, United States District Judge David N. Hurd issued a Decision and Order which granted in part and denied in part the motions for summary judgment, resulting in the dismissal of Plaintiff's § 1983 claims for failure to investigate (Count Three), the suppression of evidence (Count Four), supervisory liability (Count Six), and stigma-plus defamation (Count Eight), Plaintiff's claim for emotional distress (Count Ten), as well as Defendants Lester, Tioga County District Attorney's Office, and the Jane/John Does. *See* Dkt. No. 125 at 62-63. As a result, Judge Hurd held the following claims survived summary judgment: (1) the malicious prosecution claims brought pursuant to § 1983 and state law (Counts One and Nine) against Defendants Mulvey, Andersen and DA Keene; (2) the § 1983 fabrication of evidence claim (Count Two) against Defendants Mulvey, Andersen, DA Keene, and Thayer; (3) the § 1983 conspiracy claim (Count Five) against Defendants Mulvey,

DA Keene, and Thayer; and (4) the § 1983 municipal liability claim (Count Seven) against the County. *See id.* at 63.

Defendants Mulvey, Anderson, DA Keene, and the County appealed Judge Hurd's March 23, 2023, Decision and Order. *See* Dkt. Nos. 133, 135. On November 6, 2024, the Second Circuit dismissed the appeal for lack of jurisdiction. *See* Dkt. No. 153.

After nearly a decade of litigation, and several adjournments of the trial date at the request of the parties, this case was reassigned to the undersigned on June 5, 2025. *See* Dkt. No. 163. On September 2, 2025, the parties entered a partial stipulation of discontinuance against the County Defendants. *See* Dkt. No. 165. The stipulation was so ordered. *See id.* at 2.

Trial is scheduled to commence on October 27, 2025. In accordance with Judge Hurd's Decision and Order and the so-ordered partial stipulation of discontinuance, the following are the only claims that remain for trial: (1) malicious prosecution, brought pursuant to § 1983 and state law, against Defendants Mulvey and Andersen; (2) § 1983 fabrication of evidence against Defendants Mulvey, Andersen, and Thayer; and (3) § 1983 conspiracy against Defendants Mulvey and Thayer. As such, the only Defendants that remain for trial are Defendants Mulvey, Andersen, and Thayer.

In advance of trial, Plaintiff and Defendants have moved *in limine* for the admission and/or preclusion of certain evidence. *See* Dkt. Nos. 181, 195. Plaintiff requests the following: (1) preclusion of reference to any evidence against Plaintiff that was found inadmissible by state courts during Plaintiff's various criminal trials, such as polygraph, aging blood, and certain prior bad acts; (2) preclusion of evidence related to the alleged confrontation between Plaintiff and Mary Jo Harris; (3) preclusion of argument related to actual guilt; (4) admission of the state court

3

decision dismissing the first indictment against Plaintiff; and (5) preclusion of evidence related to Plaintiff's prior arrests. *See* Dkt. No. 181.

Defendants Mulvey and Andersen[1] seek the following relief: (1) preclusion of evidence of information unknown to Defendants at the time of the 2007 indictment; (2) preclusion of argument or questions using information that will not be supported by admissible evidence; (3) preclusion of evidence related to dismissed claims; (4) preclusion of evidence related to Plaintiff's actual guilt or innocence; (5) preclusion of expert testimony; (6) preclusion of undisclosed witnesses; (7) preclusion of testimony characterizing blood evidence analysis as "junk science"; (8) permitting cross-examination of Plaintiff about his employment of John Andrews; (9) preclusion of outtakes from "*48 Hours*"; (10) preclusion of evidence or questioning about prior allegations of misconduct or lawsuits against Defendants; (11) preclusion of evidence or questioning related to corruption in the New York State Police or Troop C; (12) preclusion of evidence of business losses; (13) preclusion of evidence disparaging the character or reputation of Michele Harris; (14) preclusion of suggesting any damages amount to the jury; (15) preclusion of reference to Defendants or their counsel as "New York State Police" or "the State"; (16) preclusion of evidence or argument that Defendants will be indemnified; and (17) permitting Defendants to re-call witnesses if necessary. *See* Dkt. No. 195 at 1-2.[2]

Plaintiff and Defendants have responded in opposition to the *in limine* motions. *See* Dkt. Nos. 198, 200. As set forth below, the motions are granted in part and denied in part.

---

[1]  Defendants Mulvey and Andersen will be collectively referred to as "Defendants" for the remainder of this Memorandum-Decision and Order, as Defendant Thayer has not moved *in limine*.

[2]  Defendants reference preclusion of evidence of Defendants' grand jury or trial testimony as the basis for liability in their notice of motion, but do not brief the issue in their memorandum of law. Therefore, the Court does not reach the issue at this time.

## II. BACKGROUND

The Court assumes the parties' familiarity with the factual background underlying this action; the following is a brief recitation thereof.  In September 2001, Plaintiff's wife, Michele Harris, disappeared from their home in Tioga County, New York.  Michele's body was never found, nor was a murder weapon ever recovered.  At the time Michele disappeared, the couple was embroiled in a rancorous divorce.  Although investigators focused their efforts on Plaintiff, the investigation stalled for years, as investigators failed to find any evidence that physically linked Plaintiff to a crime against Michele.  Eventually, DA Keene sought an indictment against Plaintiff.

In 2007, the first indictment against Plaintiff was dismissed and, a month later, DA Keene sought another indictment based on new evidence.  According to Plaintiff, this new evidence was manipulated blood spatter analysis from the Harris family home and false testimony from key witnesses.  A second indictment was secured before a grand jury in 2007 and a trial jury later found Plaintiff guilty of Michele's murder.  However, shortly after the verdict, a local farmer named Kevin Tubbs came forward to say that he had seen Michele and an unidentified man (someone other than Plaintiff) standing in the driveway of the Harris property in the early morning on the day that Michele disappeared.  This testimony, if credited by the jury, would have contradicted the prosecution's timeline of the alleged murder and subsequent cleanup.  Accordingly, Plaintiff was granted a new trial.

Nonetheless, even with Tubb's testimony, a second jury also voted to convict Plaintiff.  Although the Appellate Division reviewed Plaintiff's conviction on appeal and affirmed, the proof that supported the guilty verdict overlapped with the evidence that Plaintiff later claimed was fabricated.  The Court of Appeals eventually vacated Plaintiff's conviction on other grounds and

ordered a new trial. The third trial was held in a neighboring county and tried by a new prosecutor. The result: a hung jury. The case was, yet again, re-tried a year later. This fourth and final trial, a bench trial, ended in an acquittal on May 24, 2016. On August 22, 2017, Plaintiff filed the present action, alleging, as detailed above, that law enforcement had fabricated the evidence used to convict him.

## III. DISCUSSION

### A.    Motions *in Limine*

A motion *in limine* enables the Court to make an advance ruling on the admissibility of certain anticipated trial evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022). Generally, all "[r]elevant evidence is admissible" unless otherwise provided by an Act of Congress, the United States Constitution, or the Federal Rules of Evidence. Fed. R. Evid. 402. For instance, Rule 403 grants "the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R. Evid. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)). Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). The Court is also "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as

"the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

**B.      Uncontested Issues**

The parties, through their respective responses to the motions *in limine*, have narrowed a number of points at issue.  Defendants do not contest Plaintiff's third and fifth motions, which seek preclusion of argument related to actual guilt or evidence related to Plaintiff's prior arrests. *See* Dkt. No. 198-8 at 4.  And Plaintiff does not contest Defendants' first, second, fourth, fifth, seventh, eleventh, sixteenth, or eighteenth motions, which seek preclusion of information unknown to Defendants at the time of the 2007 indictment; argument or questions using information that will not be supported by admissible evidence; evidence related to Plaintiff's actual guilt or innocence; expert testimony; testimony characterizing blood evidence analysis as "junk science"; evidence or questioning related to corruption in the New York State Police or Troop C; reference to Defendants or their counsel as "the State"; as well as permission to re-call witnesses if necessary, so long as such recall is done for purposes that were not anticipated or foreseeable before trial.  *See* Dkt. No. 200 at 6.  Plaintiff includes a few caveats to his concessions, *see id.* at 6 n.1 and n.2, which will be addressed below; but, unless otherwise noted herein, these ten motions are denied as moot.

**C.      Defendants' Motions**

*1.  Information Obtained After the 2007 Indictment*

Defendants' second motion seeks an order precluding Plaintiff from making assertions or questioning witnesses about allegations "that will not be supported by admissible evidence."  *See* Dkt. No. 195-6 at 12-15.  Defendants list ten categories or topics of evidence that they deem unsupported by admissible evidence.  *See id.* at 13.  As noted above, Plaintiff generally consents

7

to this motion, however, he notes that, to the extent Defendants make independent motions to preclude these categories of evidence, such motions are addressed in other parts of the parties' papers. *See* Dkt. No. 200 at 6 n.1. These arguments are addressed herein, to the extent raised by either party.

Plaintiff specifically contests Defendants' request to preclude "use of allegedly enhanced photographs in the grand jury." *Id.* The Court will address this specific argument now.

Defendants appear to argue that the use of allegedly enhanced photographs in the grand jury proceedings was not discovered until "many years after the 2007 indictment." Dkt. No. 195-6 at 13. In response, Plaintiff contends that "[t]he question for purposes of admissibility in this trial should not be governed by when the evidence was discovered by Plaintiff; it should be governed by when it was discovered (or committed) by the Defendants." Dkt. No. 200 at 6 n.1 (emphasis omitted). Plaintiff cites *Warr v. Liberatore*, 853 Fed. Appx. 694, 697 (2d Cir. 2021), which states: "although probable cause is an objective standard, this objective inquiry must look at the facts an arresting officer knew at the time of arrest."

Generally, Plaintiff is correct that, to the extent falsified evidence was knowingly *used* at the 2007 grand jury proceeding or provided to DA Keene to pressure him to pursue an indictment, such evidence is relevant to the determination of triable issues. However, Plaintiff's argument misses the point. Probable cause does not need to be established at trial. "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quotation omitted). Therefore, to prove his malicious prosecution claim, Plaintiff

must rebut the presumption of probable cause through evidence that Defendants knowingly falsified or suppressed evidence in bad faith.

At a status conference on October 24, 2025, the parties expressed disagreement over whether "enhanced" or "doctored" photographs were presented to the 2007 grand jury. It has not been made clear to the Court: (1) what exact photographs were presented to the 2007 grand jury; or (2) when the discovery of the "enhanced" nature of the photographs was made. Accordingly, the Court reserves on the portion of Defendants' first motion *in limine* pertaining to the use of allegedly enhanced photographs at the 2007 grand jury proceeding. The parties should be prepared to answer at trial what photographs were used and when the discovery of their allegedly enhanced nature was made.

### 2. Evidence Related to Actual Guilt or Innocence

As discussed, Plaintiff generally does not contest Defendants' fourth motion, seeking preclusion of evidence of actual guilt or innocence. However, Plaintiff notes that certain evidence mentioned in Defendants' fourth motion (namely, the reference to a phone call that occurred on the morning Michele disappeared) should not be precluded. *See* Dkt. No. 200 at 6 n.2. The Court agrees with Plaintiff.

Indeed, part of Plaintiff's case for trial is an accusation that Defendants tampered with witnesses to modify their renditions of events, including whether the Harris family babysitter, Defendant Thayer, agreed to take false credit for an exculpatory phone call made by Plaintiff and to blame Plaintiff for inculpatory acts that she had performed herself. *See* Dkt. No. 182 at 3. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Plaintiff is therefore correct that, although proof he,

9

and not Defendant Thayer, made this call may be indicative of his innocence, this evidence is also relevant to the issue of whether Defendants fabricated testimony that was then presented to the grand jury in 2007. In sum, evidence of this alleged phone call, including when it was made and by whom, is relevant to the issues for trial. Accordingly, Defendants' fourth motion is denied without prejudice, to the extent it seeks the broad preclusion of "the timing possibility of a drive and a telephone call." Dkt. No. 195-6 at 18.

### 3. *Evidence Related to Dismissed Claims*

Defendants' third motion requests the preclusion of evidence related to claims that have been previously dismissed in this action. *See* Dkt. No. 195-6 at 15-17. Plaintiff argues that, although the general proposition that evidence of prior dismissed claims must be excluded unless the proponent can establish relevance is correct, there is overlap between evidence that would have been admissible as to certain dismissed or withdrawn claims and evidence that is admissible as to certain claims that remain for trial. *See* Dkt. No. 200 at 22-23.

As an overarching matter, the Court will not permit Plaintiff to re-try issues before a jury that were dismissed at summary judgment or by virtue of stipulation of dismissal. Pursuant to the long-standing "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented*, 466 U.S. 144 (1984). Thus, where claims have been dismissed, "it is generally appropriate to preclude testimony or evidence regarding those same previously dismissed claims during a jury trial." *Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361, 2017 WL 690179, *2 (D. Conn. Feb. 21, 2017), *aff'd sub nom. Hannah v. Walmart Stores, Inc.*, 803 Fed. Appx. 417 (2d Cir. 2020).

As the Court is generally bound by its own prior rulings, this evidence would be irrelevant and unnecessary, and any potential probative value is substantially outweighed by the risk of unfair prejudice, confusion, and delay. *See* Fed. R. Evid. 403. Thus, to the extent that Defendants seek to preclude Plaintiff from re-litigating issues that the Court has already decided, Defendants' motion is granted.

However, Defendants primarily seek a much narrower ruling: that evidence or argument regarding Defendants' failure to investigate Stacy Stewart or Christopher Thomason as potential suspects should be precluded. *See* Dkt. No. 195-6 at 16-17.

At this procedural posture, three claims remain: malicious prosecution, fabrication of evidence, and conspiracy to violate Plaintiff's civil rights. Plaintiff's Count Three, for failure to investigate, was premised on allegations that Defendants "refused to acknowledge [Plaintiff's] innocence or to investigate evidence demonstrating that Stacy Stewart had the motive, the means, and the opportunity to orchestrate Michele's death." Dkt. No. 1 at ¶¶ 108-109. This claim was dismissed as abandoned at summary judgment. *See* Dkt. No. 125 at 29-30.

However, evidence that Defendants zeroed in on Plaintiff, to the exclusion of any other suspects, is not necessarily only relevant to a failure to investigate claim. Plaintiff argues that evidence regarding failure to investigate other suspects is essential to his malicious prosecution claim. *See* Dkt. No. 200 at 22-23. Specifically, Plaintiff contends that the element of malice is typically shown through circumstantial rather than direct evidence and Defendants' "myopic" focus on Plaintiff in their investigation is circumstantial evidence essential to the element of malice. *See* Dkt. No. 200 at 22-23. Indeed, the Second Circuit has observed that malice, in the context of a malicious prosecution claim, may be inferred from evidence of a "myopic focus on [the plaintiff], to the exclusion of all other suspects[.]" *Manganiello v. City of New York*, 612

F.3d 149, 164 (2d Cir. 2010).  It is also clear, however, that a "myopic focus" on a single suspect,

standing alone, is not enough to establish actual malice:

> [myopic focus on the plaintiff] was just one of several factors
> identified by the Circuit in making an inference of malice [in
> *Manganiello*].  The other cited grounds for inferring malice were
> the defendant's "otherwise seemingly inexplicable false statements
> about [plaintiff's] conduct that were contrary to the reported first-
> hand knowledge of others; [defendant's] willingness to coerce an
> inculpatory statement from one unwilling person in exchange for
> not reporting that person's known criminal activities; and his
> willingness to have [plaintiff] indicted on the basis of testimony of
> another person who was known to have lied to [defendant] at least
> once in this very matter and who was evidently willing to intimidate
> others into falsely providing the evidence [defendant] sought."

*Davis-Guider v. City of Troy*, No. 1:17-CV-1290, 2023 WL 2693438, *6 (N.D.N.Y. Mar. 29,

2023), *aff'd*, No. 23-589, 2024 WL 5199294 (2d Cir. Dec. 23, 2024) (quoting *Manganiello*, 612

F.3d at 164) (internal citations omitted).  Thus, although myopic focus on Plaintiff is not, alone,

enough for a finding of malice, it is not entirely irrelevant to the triable claims.

Accordingly, Plaintiff is precluded from offering evidence that relates solely to dismissed

claims.  However, at this time, the Court will not categorically exclude evidence that may be

relevant to the element of malice for purposes of Plaintiff's malicious prosecution claim.

Defendants' request that the Court preclude "[a]ny evidence or argument that . . . Defendants

allegedly failed to investigate Stacy Stewart or that Stacy Stewart had an alleged motive, means,

or opportunity to kill Michele Harris," Dkt. No. 195-6 at 14, is reserved on, so that the issue can

be placed in its appropriate factual context at trial.  Defendants' third motion is, therefore, granted

in part and reserved on in part.

### 4.  Indemnification

Defendants argue, in their seventeenth motion, that Plaintiff should be precluded from introducing evidence regarding Defendants' potential indemnification because such evidence is irrelevant and prejudicial.  *See* Dkt. No. 195-6 at 29.  Plaintiff responds that evidence of indemnification is admissible for the purposes of evaluating punitive damages.  *See* Dkt. No. 200 at 30.

The Court agrees that references to potential indemnification, generally, are unduly prejudicial and irrelevant.  *See Diggs v. Guynup*, 621 F. Supp. 3d 315, 325 (N.D.N.Y. 2022) ("The Court agrees with Defendants that evidence of indemnification or potential indemnification is not relevant and may be unfairly prejudicial") (citing *Fox v. Triborough Bridge & Tunnel Auth.*, No. 17-CV-4143, 2019 WL 5842792, *4 (E.D.N.Y. Nov. 7, 2019)); *Nunez v. Diedrick*, No. 14-CV-4182, 2017 WL 4350572, *2 (S.D.N.Y. June 12, 2017) (holding that "the Court, like several other district judges in this Circuit, finds that references to . . . potential indemnification obligations would serve no probative value and potentially cause unwarranted prejudice").

However, there is a limited circumstance in which evidence of indemnification could be relevant and admissible.  If the jury finds one or more Defendants liable and determines that Plaintiff is entitled to an award of punitive damages, and, thereafter, Defendants introduce evidence that calls into question any Defendant's ability to satisfy a judgment, it may be permissible for Plaintiff to introduce evidence relating to indemnification.  *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("Although we do not decide the question of whether a fact-finder can rely upon the existence of an indemnity agreement in order to increase an award of punitive damages, we rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some *reduction* in the amount that would otherwise be awarded") (emphasis in original).

Accordingly, Defendants' seventeenth motion is granted as it pertains to Plaintiff's case in chief; Plaintiff may not make any reference to or introduce any evidence regarding any potential indemnification of the Defendants.  However, should the jury answer in the affirmative as to liability and punitive damages, the parties may renew their motions on the issue of indemnification.

### 5.  *Rule 26(a) Disclosures: Specific Dollar Amount of Damages, Business Losses, and Undisclosed Witnesses*

Defendants argue, in their sixth, twelfth, and fourteenth motions, that Plaintiff has failed to comply with Rule 26(a) of the Federal Rules of Civil Procedure and, as such, should be precluded from requesting a specific dollar amount of damages from the jury, introducing evidence of business losses, and calling witnesses not identified in his Rule 26(a) disclosures.  *See* Dkt. No. 195-6 at 19, 26-28.  Plaintiff contends that discovery sanctions for failure to comply with Rule 26(a) are not warranted.  *See* Dkt. No. 200 at 24-27.

Rule 26 enumerates certain categories of information that litigants must provide "without awaiting a discovery order," at or within fourteen days of the parties' Rule 26(f) conference. Fed. R. Civ. P. 26(a), (c).  Under Rule 26(a)(1)(A)(i), a party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."   And Rule 26(a)(1)(A)(iii) requires a party to disclose "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

These disclosures "(like all other initial disclosures) must be made 'based on the information then reasonably available to [the disclosing party],' and is not excused because the disclosing party has not fully investigated the case." *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811, 2013 WL 5495542, *2 (S.D.N.Y. Oct. 3, 2013) (quoting Fed. R. Civ. P. 26(a)(1)(E)). Additionally, "disclosures are to be timely supplemented by the disclosing party if it learns that they are incorrect or incomplete." *Id.* (citing Fed. R. Civ. P. 26(e)(1)(A)).

"Under Rule 37(c), if a party fails to provide the information required by Rule 26(a), 'the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Glob. Weather Prods. LLC v. Reuters News & Media LLC*, No. 24-CV-507, 2025 WL 2652860, *4 (S.D.N.Y. Sept. 16, 2025) (quoting Fed. R. Civ. P. 37(c)(1)). "The purpose of the rule is 'to prevent the practice of "sandbagging" an adversary with new evidence,' and 'to alert an opposing party of the need to take discovery of the named witness[.]'" *Orsaio v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 6:17-CV-00685, 2022 WL 351827, *11 (N.D.N.Y. Jan. 14, 2022), *aff'd*, No. 22-596, 2023 WL 3410554 (2d Cir. May 12, 2023) (quoting *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999); *Pal v. N.Y. Univ.*, No. 06-CV-5892, 2008 WL 2627614, *4 (S.D.N.Y. June 30, 2008)) (internal citations omitted).

When considering whether to exclude evidence pursuant to Rule 37, courts in this Circuit must consider "(1) a party's explanation for the failure to comply with the Federal Rules, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006); *see Fang v. Dofar*, No. 9:15-CV-1251, 2019 WL 315036, *3 (N.D.N.Y. Jan. 23, 2019) ("In determining whether a witness should be precluded, the

15

court should consider: '(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance'") (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

### i. Specific Dollar Amount of Non-Economic Damages and Evidence of Business Losses

Specifically, Defendants argue that Plaintiff should be precluded from offering evidence of his alleged business losses because the complaint states he "suffered the loss all [sic] of his businesses and associated enterprises," Dkt. No. 1 at ¶ 1, but Plaintiff failed to provide computation of such damages as required by Rule 26(a)(1)(A)(iii) and did not provide an explanation and calculation of such losses upon demand. Dkt. No. 195-6 at 26-27. Plaintiff concedes that his initial disclosure did not provide a calculation as to his economic or non-economic damages. *See* Dkt. No. 200 at 25. Plaintiff represents, however, that evidence related to economic losses would be limited to fact-witness testimony and that, throughout the course of discovery, he produced records regarding his business losses and other economic damages to the extent they were in his possession and appeared for a deposition where he explained that he spent more then two million dollars in criminal defense fees. *See id.* Plaintiff also represents that litigation with his ex-business partner remained pending until November 2023, which prevented him from being able to provide information related thereto in his initial disclosures. *See id.* at 26.

With regard to Rule 26(a)(1)(a)(iii), Plaintiff's initial disclosures direct Defendants to the complaint for a computation of its categories of damages. *See* Dkt. No. 195-2 at 2 ("As specified in the complaint . . ."); Dkt. No. 195-3 at 2 (same). However, the computation of damages is

hardly "specified" in the complaint.  *See* Dkt. No. 195-2 at 2; Dkt. No. 195-3 at 2.  Indeed, neither

the complaint nor the civil cover sheet indicate a claimed dollar amount demand for damages.

*See* Dkt. No. 1; Dkt. No. 1-1.

"[E]ven where a litigant is not certain of its economic damages when disclosure is due,

'[he] still has the responsibility to provide each category of required disclosures based on the

information it has at the time, and to supplement those disclosures as more information is

gained.'" *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 221 (S.D.N.Y. 2021) (quoting

*U.S. Bank Nat'l Ass'n.*, 2013 WL 5495542, at *3; *see Mikulec v. Town of Cheektowaga*, 302

F.R.D. 25, 30 (W.D.N.Y. 2014).  Plaintiff represents that he supplemented his disclosures related

to the issue of damages to some extent, but the Court cannot glean from the parties' submissions

exactly what was or was not disclosed.

At this juncture, the Court cannot speculate as to what may be adduced at trial.  To the

extent that any evidence is produced at trial with respect to economic damages for business losses

and non-economic damages, the Court will rule on admissibility after hearing the foundation that

has been laid.  Accordingly, the Court reserves on Plaintiff's twelfth, sixth, and fourteenth

motions as such motions relate to discovery sanctions for failure to comply with Rule 26(a).

### ii. Undisclosed Witnesses

Although Defendants do not limit their motion to any particular undisclosed witnesses,

Plaintiff  believes that one particular witness is in Defendants' crosshairs: Stuart Raskin, Plaintiff's

business accountant.  *See* Dkt. No. 200 at 27.  The Court will apply the factors discussed above to

determine whether to preclude Mr. Raskin's testimony pursuant to Rule 37.

As for the first factor, Plaintiff acknowledges that he failed to identify Mr. Raskin in his

initial disclosures, but argues that this was merely an oversight and was not "an expression of bad

faith." *Id.* at 28.  However, this explanation is unsatisfactory, as "[e]vidence may be precluded pursuant to Rule 37(c) without the need for a showing of bad faith." *Est. of Jaquez v. Flores*, No. 10-CV-2881, 2016 WL 1060841, *7 (S.D.N.Y. Mar. 17, 2016) (citation omitted).

With respect to the second factor, Plaintiff argues that testimony from Mr. Raskin is relevant because he "will assist the members of the jury in understanding the finances of the business for which he served as accountant for several years [and] can provide a foundation for records he generated in that capacity[.]"  Dkt. No. 200 at 28.

As to the third fact, Plaintiff argues that Defendants were aware of Mr. Raskin and his potential relevance to the issues at bar because his name appears in other documents exchanged during discovery.  *See* Dkt. No. 200 at 27-28.  However, "Defendants' knowledge of the existence of a witness does not satisfy . . . Plaintiff's disclosure obligation." *Fang*, 2019 WL 315036, at *3 (citing *Schiller v. City of New York*, 2008 WL 4525341, *4 (S.D.N.Y. 2008)).  Plaintiff offers no further support to demonstrate a lack of prejudice. *See Castro v. City of New York*, No. 06-CV-2253, 2009 WL 2461144, *6 (E.D.N.Y. Aug. 10, 2009) ("[I]t is plaintiff's burden to demonstrate lack of prejudice, not defendants' burden to demonstrate that they are prejudiced") (citations omitted).

And, as for the fourth factor, a continuance has not been requested, nor would one be within the realm of reasonable possibilities. *See id.* (finding a continuance not to be a reasonable possibility when trial was scheduled to commence approximately three years after action was commenced).  Trial is set to commence more than eight years after the commencement of this action.

For these reasons, the Court finds preclusion of Mr. Raskin's testimony is warranted.  To the extent Defendants' motion could apply to other undisclosed witnesses not mentioned in the

parties' papers, the Court will not speculate as to the application of the relevant factors. Accordingly, Defendants' sixth motion is granted in part and reserved in on part: granted to preclude Mr. Raskin from testifying and reserved on as to any other undisclosed witness.

### 6. *Specific Dollar Amount of Damages*

In their fourteenth motion, Defendants argue that Plaintiff should be precluded from requesting a specific dollar amount of damages from the jury because such requests are generally disfavor in this Circuit. *See* Dkt. No. 195-6 at 28. Plaintiff opposes this motion, arguing that permitting the request of a specific dollar amount is generally left to the discretion of the trial court. *See* Dkt. No. 200 at 29.

The parties are correct that, although "specifying target amounts for the jury to award is disfavored, [t]he determination of whether to allow a plaintiff to request a specific damage amount from the jury is within the court's discretion." *Brown v. Cornell*, No. 9:17-CV-01036, 2021 WL 2711511, *9 (N.D.N.Y. July 1, 2021) (citation and internal quotation marks omitted) (alteration in original). At this time, the Court is not inclined to preclude Plaintiff from offering a specific dollar amount regarding damages to the jury at closing. *See id.* "[T]he Court will provide the jurors with a limiting instruction stating that the amount provided by Plaintiff is not evidence but only a suggestion as to the amount, if any, to be awarded." *Id.* (citation omitted).

Accordingly, Plaintiff's fourteenth motion *in limine* is denied on this ground.

### 7. *Testimony Regarding Business Losses*

Defendants also argue, in their twelfth motion, that Plaintiff cannot offer competent expert testimony to establish a causal link between the Defendants' alleged actions and any effect on his business entities. *See* Dkt. No. 195-6 at 27. Although it is true Plaintiff has not been qualified as an expert witness, it is still permissible for him to testify as to his personal knowledge of the

19

damages he allegedly suffered.  *See U.S. ex rel. Feldman v. van Gorp*, No. 03-CV-8135, 2010 WL 2911606, *9 (S.D.N.Y. July 8, 2010) ("Because personal knowledge must be established to the court and jury, this Court cannot anticipate *in limine* what evidence of [the lay witnesses'] personal knowledge will be adduced at trial") (internal quotation marks and quotation omitted). Further, the question of whether Plaintiff has proven that his economic damages were proximately caused by the alleged constitutional violations is within the province of the jury and is not a question the Court can reach at this time.  *See Burdick v. Kurilovitch*, No. 5:14-CV-1254, 2017 WL 11500489, *3 (N.D.N.Y. Dec. 7, 2017) ("To recover compensatory damages . . . a plaintiff must prove that his injuries were proximately caused by the constitutional violation . . . [;] proximate cause is generally a factual determination for the jury") (quotation and internal quotation marks omitted).

Accordingly, the Court reserves on Defendants' twelfth motion *in limine* on these additional grounds.

### 8.  *Defendant Mulvey's Father's Employment and Plaintiff's Corresponding Bad Acts*

Defendants' eighth motion asserts: (1) testimony that Defendant Mulvey was motivated to pursue Plaintiff's prosecution because Plaintiff fired her father, John Andrews, in the 1980s should be precluded because it is "based on no evidence, whatsoever," and is irrelevant; and (2) if Plaintiff is permitted to testify about firing John Andrews, Defendants should be permitted to cross-examine him about related bad acts, such as stealing checks from sales people, including John Andrews.  Dkt. No. 195-6 at 21-22.  Plaintiff offers numerous arguments in response: (1) bias is not an element or defense to any claim, regardless of whether Defendants' narrative is true; (2) testimony regarding Plaintiff's firing of John Andrews does not open the door to allegations of corporate malfeasance because such allegations are not inconsistent with any theory of malice; (3)

evidence of these other bad acts is barred by Rule 404(b) of the Federal Rules of Evidence; and (4) Rule 403 bars evidence of alleged corporate malfeasance because it is not substantially more probative than prejudicial.[3]

The Court has carefully considered the parties arguments; however, at this juncture, the Court will not decide the admissibility of either testimony regarding the firing of John Andrews or Plaintiff's purported bad acts because the Court cannot predict what will occur at trial. Therefore, the Court reserves ruling on Defendants' eighth motion *in limine*.

### 9. Defendants' Other Lawsuits and Misconduct

Defendants broadly assert, through their tenth motion, that any evidence of prior allegations of misconduct or lawsuits brought against Defendants should be precluded under Rule 404(b). *See* Dkt. No. 195-6 at 24-25. In response, Plaintiff claims that Defendant Mulvey admitted in her deposition that she previously secured a false confession from a criminal defendant charged with shooting his father, which led to a civil suit against her and a monetary settlement in 2000. *See* Dkt. No. 200 at 19-21.

First, Plaintiff argues that evidence regarding this alleged misconduct, lawsuit, and settlement is admissible under Rule 404(b) to show knowledge, absence of mistake, or lack of accident with regard to allegedly falsifying witness statements to secure an indictment against Plaintiff. *See id.* at 20-21. Second, because Defendant Mulvey testified that she could not remember important details about the incident, Plaintiff contends that he should be permitted to

---

[3] Plaintiff also contends that this prior bad acts evidence would likely be based only on inadmissible hearsay. While this could conceivably be true, the Court does not know, without observing the evidence adduced at trial, how Defendants would seek to introduce this evidence. Certainly Defendant Mulvey would not be barred from testifying about her personal knowledge or recollection of relevant events. This portion of Plaintiff's arguments will also need to be raised in the context of trial, should he feel it is necessary.

impeach her credibility on cross-examination, pursuant to Rule 608(b), by inquiring into whether she provided untruthful testimony at her deposition. *See id.* at 21. Specifically, Plaintiff asserts: "Here, the notion that Defendant Mulvey secured a false confession about a child shooting his father, leading to a settlement or judgment in a civil suit against her, and that she forgot that victim's name or the timing of this incident—is highly implausible, and her testimony under oath as to that ignorance is thus probative of her willingness to tell the truth." Dkt. No. 200 at 21.

### i. Rule 404(b) Arguments

Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therein." Fed. R. Evid. 404(b). Such evidence may be allowed, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b)(2). The decision whether to admit evidence under Rule 404(b) turns on "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Huddleston v. United States*, 485 U.S. 681, 688 (1988). Rule 403 provides the district court with broad discretion to exclude evidence where the probative value is substantially outweighed by the possibility of jury prejudice or confusion. *See* Fed. R. Evid. 403.

"With respect to prior lawsuits brought against defendants, the relevance of such evidence and the probative-prejudice balancing test depends on the nature of the prior lawsuit, including whether the prior lawsuit is sufficiently related to the instant case, and the purpose for which such evidence will be used at trial." *Bermudez v. City of New York*, No. 15-CV-3240, 2019 WL 136633, *7 (E.D.N.Y. Jan. 8, 2019). "'[C]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties.'"

*Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (quotation omitted).  "Admitting evidence about previous cases 'inevitably result[s] in trying those cases . . . before the jury,' and '[t]he merits of the . . . other cases would become inextricably intertwined with the case at bar.'"  *Id.* (quoting *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989)).  "However, evidence of factually similar lawsuits introduced for a permissible purpose under Rule 404(b) may be admitted."  *Bermudez*, 2019 WL 136633, at \*7.

Neither party has submitted enough information for the Court's consideration of the issue of Defendants' prior bad acts or lawsuits.  *See Bermudez*, 2019 WL 136633, at \*8 ("Plaintiff has not presented the court with specific complaints or civil actions brought against defendants, unrelated or otherwise"); *Viada v. Osaka Health Spa, Inc.*, No. 04-CV-2744, 2005 WL 3435111, \*1 (S.D.N.Y Dec. 12, 2005) (denying vague motions *in limine* because "the Court is unable to determine, with any degree of certainty, whether the [evidence] sought to be excluded from the trial would be inadmissible under any of the provisions of the Federal Rules of Evidence").  Defendants merely assert than any and all prior bad acts or lawsuits are inadmissible under Rule 404(b).  *See* Dkt. No. 195-6 at 24.  And, Plaintiff has not himself moved for a ruling on the admissibility of this purported prior lawsuit against Defendant Mulvey—in opposition to Defendants' motion to preclude evidence of any lawsuits or alleged misconduct, Plaintiff asks the Court not only to deny Defendants' motion, but to deem such evidence admissible.  *See* Dkt. No. 200 at 19-21.  Further, Plaintiff has not supplied documents or further information to substantiate his claim that Defendant Mulvey was involved in this other lawsuit, besides deposition questions and testimony which were objected to by defense counsel.  *See* Dkt. No. 200-5.

The Court cannot rule on this motion without knowing more about what information Plaintiff may attempt to use at trial, and for what purpose.  The parties should be prepared to

provide additional information if they seek preclusion or admission of this evidence.  Of course, evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show action in conformity therein.  Thus, Plaintiff may not introduce such evidence for an improper purpose.  However, given the lack of information that has been presented to the Court, Defendants' tenth motion *in limine* is reserved on to the extent it seeks preclusion under Rule 404(b).

### ii. Rule 608(b) Arguments

Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness."  "[C]ase law interpreting the express purpose of Rule 608(b) makes clear that not all prior bad acts are admissible to impeach a witness."  *United States v. Devery*, 935 F. Supp. 393, 407 (S.D.N.Y. 1996), *aff'd sub nom. United States v. Torres*, 128 F.3d 38 (2d Cir. 1997).  "Such acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness," *id.*, and, "[u]nder Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination," *United States v. Cruz*, 894 F.2d 41, 43 (2d Cir. 1990) (citation omitted).

Plaintiff expresses skepticism that Defendant Mulvey would forget certain details about a lawsuit that was allegedly commenced nearly three decades ago.  *See* Dkt. No. 200 at 21.  However, Plaintiff provides no legal basis for the Court to rule, at this time, that Defendant Mulvey's credibility may be impeached because she does not remember as much as Plaintiff thinks she should have at her deposition.

The single case Plaintiff cites for this argument discusses a parties' use of personnel files at trial to explore whether a witness provided untruthful testimony at his deposition. *See id.* (citing *Bolia v. Mercury Print Prods., Inc.*, No. 02-CV-6510, 2004 WL 2526407, *2 (W.D.N.Y. Oct. 28, 2004). In *Bolia*, the deponent denied being involved in prior litigation. *See Bolia*, 2004 WL 2526407, at *2. At trial, the court permitted plaintiff to use documentary evidence that showed the deponent was in fact named as a defendant in a prior federal lawsuit, to impeach his credibility. *See id.* However, here, Defendant Mulvey did not deny the existence of this other lawsuit, she merely testified that she did not remember certain details. *See* Dkt. No. 200-5. As such, Plaintiff has not demonstrated that Defendant Mulvey's credibility can be explored merely on the basis that she did not remember certain details pertaining to the purported lawsuit. To the extent Plaintiff seeks a pre-trial ruling that this evidence is admissible pursuant to Rule 608(b), the motion is denied without prejudice to renewal.

### 10. Evidence of Michele Harris' Character

Defendants also seek preclusion of evidence that would characterize Michele Harris as promiscuous, a drug user, or as having associated with a "rough crowd." *See* Dkt. No. 195-6 at 27. Defendants argue that Plaintiff's presentation of evidence of Michele's character would be used either to "simply tarnish" her reputation or to "convince the jury that there were speculative alternative suspects to [her] disappearance, both of which are entirely unrelated to the only issues in this trial." *Id.* Plaintiff contends that Defendants' arguments "overlook the element of malice and how a myopic focus on one suspect to the exclusion of others is probative of that element of the malicious prosecution claims." Dkt. No. 200 at 23. Plaintiff also contends that "broad-based preclusion of evidence relating to Michele's social life at this time would also give the jury a tilted

picture of the alleged 'probable cause' to prosecute Calvin, as probable cause inherently requires an analysis of the 'totality of circumstances.'"  *Id.* at 23-24 (citation omitted).

To address these arguments, it seems prudent to begin with a discussion of what must be proven at trial for Plaintiff to prevail.   "To state a § 1983 malicious prosecution claim a plaintiff 'must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'"  *Cornelio v. Connecticut*, 32 F.4th 160, 178 (2d Cir. 2022) (quoting *Manganiello*, 612 F.3d at 160-61).  In New York, that substantive showing requires a plaintiff to prove "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)).

"Probable cause is a 'complete defense' to malicious prosecution." *Jeanty v. Cerminaro*, No. 21-1974-CV, 2023 WL 325012, *5 (2d Cir. Jan. 20, 2023) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).  "'Although a grand jury indictment gives rise to a presumption' of probable cause, 'the presumption may be rebutted by evidence of various wrongful acts on the part of police,' such as 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  *Id.* (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)).

Plaintiff appears to interpret this motion as a thinly veiled attempt to exclude evidence of Defendants' alleged failure to consider Stacy Stewart, or other people that Michele socialized with, as suspects.  *See* Dkt. No. 200 at 23.  As has been discussed, there is no longer a failure to investigate claim—Plaintiff abandoned such claim at summary judgment.  *See* Dkt. No. 125 at 29-

26

30.  However, the preclusion Defendants seek pursuant to their thirteenth motion is exceptionally broad.

The Court will not permit Plaintiff to present a failure to investigate claim at trial; however, evidence that Defendants suppressed evidence that may have implicated suspects other than Plaintiff may be relevant and admissible as to his malicious prosecution claim.  Indeed, a claim for malicious prosecution against a police officer "requires some showing that the defendant distorted the process by which [the] plaintiff was brought to trial."  *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015) (quoting *Breeden v. City of New York*, No. 09-CV-4995, 2014 WL 173249, *10 (E.D.N.Y. Jan. 13, 2014)).  "Showing that the police 'failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith' satisfies the initiation element of malicious prosecution."  *Id.* (quoting *Manganiello*, 612 F.3d at 160).  Therefore, it would be improper at this time to preclude evidence that Defendants suppressed evidence of other potential suspects, withheld evidence related thereto, or failed to make complete and full statements of fact to prosecutors about Stacy Stewart or others, for the purpose of initiating the prosecution of Plaintiff in bad faith.  Accordingly, Defendants' thirteenth motion is denied without prejudice to renewal at trial.

### 11.  The "48 Hours" Outtakes

In their ninth motion, Defendants move for the preclusion of "outtakes from interviews taken by CBS in connection with its production of a 2006 episode of the television show "*48 Hours*" (the "48 Hours Outtakes").  *See* Dkt. No. 195-6 at 22-24.  Defendants argue that this

evidence should be precluded for lack of foundation,[4] because it is inadmissible hearsay, and because it is not probative of the "actual issues in the case because Plaintiff consistently mischaracterizes what is stated therein." *Id.*

### i. Relevance

To the extent Defendants argue that the video footage should be barred because it is not relevant, the Court disagrees.

Pursuant to Rule 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In general, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 402. A court may, however, "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The portion of the 48 Hours Outtakes that Plaintiff intends to proffer occurred in 2006, before the 2007 grand jury proceeding, and shows Defendants Mulvey and Andersen, DA Keene, and Dr. Henry Lee (an expert witness that testified at the 2007 grand jury proceeding) discussing

---

[4] If the admissibility of the 48 Hours Outtakes is not stipulated to, Plaintiff must establish foundation at trial. The Court reserves ruling on this portion of Defendants' motion, as it does not know what foundational proffer Plaintiff will make. *See LeClair v. Raymond,* No. 1:19-CV-28, 2022 WL 219609, *7 (N.D.N.Y. Jan. 25, 2022) (reserving ruling on foundation of video exhibits for trial).

evidence and strategy. *See* Dkt. No. 200-4.[5]  During the video footage, the participants discuss

their analysis of blood stains found in the Harris family home that were a positive match for

Michele. *See id.*  In particular, the participants discuss the color of the blood as well as potential

non-incriminating sources of the blood, such as an unrelated injury suffered by Michele, and

strategy that could be taken to refute such other sources. *See id.* at 12:12-22; 19:13-20:25.

Plaintiff argues that the 48 Hours Outtakes are relevant as to his allegations that the

photographs of the blood were doctored and material evidence regarding the origin of the blood

was withheld from the 2007 grand jury. *See* Dkt. No. 200 at 15.  Moreover, Plaintiff asserts this

evidence is relevant to his conspiracy claim, as it is probative of whether Defendants were acting

in concert with DA Keene to present falsified or manipulated evidence to the grand jury. *See id.*

at 14.

However, according to Defendants, the footage itself, as well as sworn testimony of DA

Keene, Defendant Andersen, and Defendant Mulvey, explicitly explain that what is being

discussed in the 48 Hours Outtakes "is an attempt to lighten a black band that plagued some of the

photographs due to the improper use of a flash, not the color of blood."  Dkt. No. 195-6 at 23.

Defendants also contend that the photographs actually presented at the 2007 grand jury

proceeding were the original photographs containing the "disruptive black band" and not the

allegedly doctored versions discussed in the footage. *See id* at 23-24.

At the October 24, 2025 status conference, the parties disagreed regarding whether

"enhanced" or "doctored" photographs were actually presented to the grand jury in 2007.  This is

a factual issue that will have to be decided by the jury.  As the 48 Hours Outtakes has the

---

[5]  Exhibit D to Plaintiff's response to Defendants' motions *in limine* is a transcript of the audio in
the relevant portion of the 48 Hours Outtakes.  *See* Dkt. No. 200-4.  The Court will cite to this
docket entry as necessary, instead of the video itself, for the sake of clarity.

tendency to make the alleged fact that Defendant used falsified or doctored photographs to secure an indictment in 2007 more or less probable, Defendants' motion to preclude this evidence on relevance grounds is denied.

### ii. Hearsay

In their other argument related to this evidence, Defendants state, in a conclusory fashion, that the 48 Hours Outtakes should be precluded as inadmissible hearsay because it contains out-of-court statements and "will be offered only to prove the truth of statements made in that recording." Dkt. No. 195 at 23. Plaintiff responds that Dr. Lee's statements will not be offered for their truth, but merely to show that he discussed a strategy about defeating suspicion of the origin of the blood, and the effect that Dr. Lee's statements had on DA Keene. *See* Dkt. No. 200 at 13-14. As for DA Keene's statements contained in the video, Plaintiff contends that they are not hearsay because, although DA Keene is no longer a party to the action, his statements are those of a co-conspirator in furtherance of the alleged conspiracy with Defendants. *See id.* at 14-15.

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c)).

Certain statements are, of course, not hearsay. "'[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.'" *Id.* (quoting Fed. R. Evid. 810(c) advisory committee's note). "Thus, a statement offered to show its effect on the listener is not hearsay." *Id.* Statements made a party's co-conspirator during and in furtherance of the conspiracy are not

hearsay.  *See* Fed. R. Evid. 801(d)(2)(E).[6]  Additionally, statements by party opponents are not

hearsay.  *See* Fed. R. Evid. 801(d)(2)(A).

A statement that is hearsay "is admissible only if it falls within an enumerated exception."

*Dupree*, 706 F.3d at 136 (citing Fed. R. Evid. 802).  Federal Rule of Evidence 803(3) "allows

statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing

state of mind."  *Connecticut Cmty. Bank, Nat. Ass'n v. Bank of Greenwich*, No. 3:06-CV-1293,

2008 WL 398849, *1 (D. Conn. Feb. 11, 2008) (citing *Fun–Damental Too v. Gemmy Indus.*

*Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997)).  Rule 803(1) permits hearsay that is a present sense

impression.  *See Wei Fu v. ISO Innovative Analytics*, No. 3:12-CV-01444, 2014 WL 1289235, *5

(D. Conn. Mar. 31, 2014) (testimony regarding employment feedback was "admissible under the

present sense impression hearsay exception").

Additionally, "Rule 807 excepts from hearsay a statement 'supported by sufficient

guarantees of trustworthiness' that is 'more probative on the point for which it is offered than any

other evidence that the proponent can obtain through reasonable efforts,' and the opposing party is

given reasonable notice."  *United States v. Abarca*, No. 19-3751-CR, 2021 WL 6803226, *6 (2d

Cir. Dec. 15, 2021) (quoting Fed. R. Evid. 807(a)).  A statement will be admitted under Rule 807

if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative

evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and

advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."

*United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (quoting *United States v. Bryce*, 208

---

[6]  This is true even if the statement is made by non-party co-conspirator.  *See Alexander v.*
*Hanson*, 566 F. Supp. 3d 162, 167 (N.D.N.Y. 2021) ("'[E]vidence regarding non-party co-
conspirators is admissible against a party co-conspirator'") (quoting *Davidson v. Scully*, 148 F.
Supp. 2d 249, 253 (S.D.N.Y. 2001)).

F.3d 346, 350-51 (2d Cir. 1999)). "Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." *United States v. Griffin*, 811 Fed. Appx. 683, 686 (2d Cir. 2020) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).

Here, the Court finds any statements in the video made by Defendants Mulvey and Andersen are those of a party opponent and, thus, not hearsay. Additionally, the statements of Dr. Lee, to the extent they are offered to show their effect on DA Keene, the listener, are also non-hearsay statements. Finally, as for DA Keene's statement, they are admissible as the statements of a non-party co-conspirator made in furtherance of the alleged conspiracy to deprive Plaintiff of his clearly established constitutional rights, including the right to be free from malicious prosecution.

Even if the evidence at issue is admissible as either non-hearsay or under one of the hearsay rule's limited exceptions, any such evidence must still be sufficiently probative under Rule 401, and not otherwise excludable under Rule 403. *See Foley v. Town of Marlborough*, No. 3:19-CV-01481, 2023 WL 122040, *5 (D. Conn. Jan. 6, 2023) ("Even if relevant and admissible, evidence may be excluded 'if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence'") (quoting Fed. R. Evid. 403). As discussed, this evidence is relevant under Rule 401 and the Court does not find the probative value thereof to be substantially outweighed by the dangers contemplated by Rule 403.

For these reasons, the Court denies Defendants' ninth motion without prejudice to renewal.

**C.    Plaintiff's Motions**

      *1. Evidence Inadmissible in Criminal Court*

Plaintiff's first motion seeks the preclusion of any evidence deemed inadmissible by state criminal courts throughout Plaintiff's numerous criminal trials. *See* Dkt. No. 181 at 3-13.

During the upcoming civil trial Plaintiff must prove that one or more of the Defendants provided DA Keene with fraudulent or intentionally misleading evidence that was then presented to the 2007 grand jury and was likely to influence that grand jury's decision to indict. *See Savino*, 331 F.3d at 72. It is of no consequence what evidence was or was not presented to the trial juries—what matters here is what evidence Defendants allegedly caused to be presented to the 2007 grand jury. Simply put, evidentiary rulings made by criminal courts, post-indictment, have no bearing on whether such evidence is admissible at trial here.

As he readily admits in his papers, Plaintiff has merely repackaged arguments made before state criminal courts "to reinforce the fact that such evidence was properly excluded from criminal court." *See* Dkt. No. 181 at 4 n.3. For example, Plaintiff seeks to preclude evidence that individuals "were either asked to take a polygraph test, refused to take a polygraph test, offered or agreed to take a polygraph test and/or took a polygraph test," because such information is prejudicial to a defendant in a criminal case. Dkt. No. 181 at 4-10. For obvious reasons, criminal trial courts are concerned with the potential prejudice to a criminal defendant if a jury hears questionable scientific evidence indicative of guilt. The same concerns are not applicable here and now. *See Zahrey v. City of New York*, No. 98-4546, 2009 WL 1024261, *13 (S.D.N.Y. Apr. 15, 2009) ("Zahrey also complains that it would be unfair to allow Defendants to rely on the polygraph in defending this action . . . . However, Zahrey remains free to challenge the remaining Individual Defendants' reasonable reliance upon the polygraph in choosing to prosecute Zahrey, the reliability of which the U.S. Supreme Court and many scientific authorities have questioned").

The Court will not entertain Plaintiff's arguments that rely entirely on state criminal case law and procedure. Plaintiff is free to object to the admission of evidence at trial, relying on the Federal Rules of Evidence and other rules applicable to federal civil trials. Plaintiff's first motion *in limine* is denied without prejudice to renewal on proper grounds.

### 2. The Alleged Confrontation Between Plaintiff and Mary Jo Harris

Plaintiff's second motion seeks the preclusion of evidence related to a confrontation he had with his sister-in-law Mary Jo Harris in 2001. *See* Dkt. No. 181 at 13-16. From what the Court can glean from Plaintiff's vague recitation of the incident, Michele allegedly accused Plaintiff of threatening her with a firearm in 1996. *See id.* Michele called Mary Jo while hiding in a closet during this alleged encounter and, after Michele's disappearance in 2001, Mary Jo confronted Plaintiff about whether he had ever threatened Michele with a gun. *See id.*

Plaintiff, relying on federal and state criminal caselaw, asserts that this evidence is inadmissible as a prior bad act, pursuant to Rules 404(b) and 403, because it is not substantially more probative than prejudicial. *See id.* at 14 (citing *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002); *People v. Billups*, 45 A.D.3d 1176, 1177 (3d Dept. 2007)). Plaintiff's motion misstates the law. As discussed above, "Rule 403 allows the trial judge to exclude relevant evidence if, among other things, '*its probative value is substantially outweighed by the danger of unfair prejudice*.'" *Huddleston*, 485 U.S. at 687 (quoting Fed. R. Evid. 403) (emphasis added).

Prior bad acts cannot be offered to prove that a person had a certain character trait and acted in conformity with that trait on a particular occasion. *See* Fed. R. Evid. 404(b)(1). Rule 404(b) does, however, provide that other acts may be admissible for different purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2).

At this time, the Court does not know for what purpose Defendants may seek to offer this evidence, if at all. Decision on this request will be reserved for trial, where it can be placed in appropriate factual context. Defendants will have an opportunity to establish a foundation and relevance for this evidence and Plaintiff will have an opportunity to object.

### 3. *Introduction of the Decision Dismissing the First Indictment*

Finally, Plaintiff contends that he should be able to introduce a decision issued in 2007 by Acting Tioga County Court Judge Martin E. Smith, dismissing the first indictment against him for the murder of Michele. *See* Dkt. No. 181 at 17-20. Specifically, Plaintiff argues that "the ordeal surrounding [Plaintiff's] first indictment should be admissible because it tends to demonstrate this prior friction and a general desire to achieve goals other than the pursuit of justice." *Id.* at 19.

Evidence of the "ordeal surrounding" the first indictment is far different than a judicial decision containing legal conclusions. As Defendants point out, both sides have portions of the transcripts from both the 2005 and 2007 grand jury proceedings on their respective exhibit lists. *See* Dkt. No. 198-8 at 16. Further, Defendants represent that they will stipulate to the admission of the entire transcript of the 2005 grand jury proceeding. *See id.* And, the parties have already stipulated to the facts that: (1) Plaintiff was indicted in 2005; and (2) that indictment was dismissed on January 29, 2007. *See* Dkt. No. 186 at 1. Thus, evidence that there was an indictment in 2005 and that it was dismissed will be presented to the jury.

As was determined at summary judgment, "any § 1983 malicious prosecution claim based solely on misconduct related to [the] indictment, which was obtained in 2005 and dismissed by the trial court in 2007, [is] time-barred." *See* Dkt. No. 125 at 34. Therefore, the reasons the 2005 indictment was dismissed are irrelevant. Moreover, Judge Smith's legal findings contained within the decision dismissing the 2005 indictment are not relevant—this trial is about the evidence

presented to the 2007 grand jury.  Plaintiff has, thus, failed to establish the relevance of this evidence under Rule 401.  And, even if this evidence was relevant, its probative value is substantially outweighed by the dangers of confusing the issues, misleading the jury, and needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.  Indeed, presenting the jury in this civil trial with a judicial decision (which contains legal conclusions and factual findings) related to a criminal indictment (which is not at issue in this trial) presents a particularly acute risk of violating the dangers contemplated by Rule 403.  Accordingly, Plaintiff's third motion is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motions *in limine* (Dkt. No. 181) are **DENIED in part and RESERVED ON in part** for the reasons stated above; and the Court further

**ORDERS** that Defendants' motions *in limine* (Dkt. No. 195) are **GRANTED in part, DENIED in part, and RESERVED ON in part** for the reasons stated above; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 24, 2025
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

36